# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS LOPEZ AND KAREN LOPEZ, | CASE NO. 1:09-CV-00491-SMS |
| Plaintiffs, | |
| v. | ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANT AND DISMISSING COMPLAINT |
| CITY OF KERMAN, | |
| Defendant. | (Docs. 17 & 19) |

Both Defendant City of Kerman, by its attorneys, Henry, Logoluso & Blum, and Plaintiffs Louis and Karen Lopez, by their attorneys, Reich Law Firm, move for summary judgment (Docs. 17 and 19).  The parties have consented to the jurisdiction of a U.S. Magistrate Judge (Doc. 13).  This Court has reviewed the papers and has determined that this matter is suitable for decision without oral argument pursuant to Local Rule 78-230(h).  Having considered all written materials submitted, the Court grants summary judgment to Defendant and orders that this case be dismissed.

**I.     Background**

    **A.     Applicable Municipal Law**

On February 16, 1970, Defendant adopted Ordinance No. 178, authorizing Defendant to enter into contracts, exclusive or otherwise, with solid waste disposal contractors.  Any such

contract was to refer to the ordinance and to require the contractor to supply a performance bond. The ordinance established a mechanism for setting collection schedules, rates, and charges. Types of waste included garbage (e.g., kitchen and table refuse, animal and vegetable matter), rubbish (e.g., paper, cardboard, rags, glass), and garden refuse. All waste was only to be stored in cans or bins supplied by Defendant or its contractor. The contractor was required to collect all waste in closed, water-tight vehicles to prevent spilling. The Superintendent of Public Works was required to inspect and supervise all collection and disposal vehicles to ensure that they were clean and sanitary, and complied with all requirements of the ordinance.

On November 15, 1994, Defendant adopted Ordinance No. 94-08, which continued the provisions of Ordinance No. 178 for written contracts and performance bonds with solid waste removal contractors. Among other provisions, Ordinance 94-08 amended § 08.12.040 of the Municipal Code to add "materials capable of recycling" as a category of waste. The ordinance specified that the collection charges for "business houses" would include collection of recyclables. The ordinance amended the required contract terms and required any contractor to post a bond issued by a surety.

Before June 2008, Defendant failed to recycle or divert fifty percent of its total refuse as required by state law. In 2008, Defendant consulted with Mid-Valley Disposal, other cities, and the California Integrated Waste Management Board to draft an ordinance addressing Defendant's goals of attaining certain recyclable diversion rates for recyclables. On June 4, 2008, Defendant adopted Ordinance No. 08-02.

Intended to meet the requirements of AB939, Ordinance 08-02 required Kerman's administration to enter into an exclusive contract with a hauler of solid waste, recyclables, green waste, and demolition debris. It explicitly stated that the franchise hauler was to be the only hauler to remove any such waste materials, prohibited any resident from contracting with a competing hauler for removal of waste or recyclables, and prohibited any competing hauler from collecting solid waste, recyclables, green waste, and demolition debris. The ordinance incorporated an anti-scavenging provision. It amended the ordinances to reflect current solid waste practices, including collection of source-separate recyclables.

B.      **Additional Undisputed Facts**

Since 1992, Plaintiffs have operated a recycling center in the City of Kerman as "Dreams Recycling." The center purchases from third parties and resells for recycling aluminum, glass, plastic, bimetal, copper wire, scrap aluminum, newspaper, cardboard, refrigerators, stoves, televisions, and e-waste. According to Plaintiff Louis Lopez, "so long as I could make a penny out of it, it was recyclable." Plaintiffs do not collect garbage or refuse.

Plaintiffs secured a Kerman business license only as a recycling center. The California Department of Conservation, Division of Recycling, certifies Plaintiffs to collect aluminum, glass, plastic, and metals in two Kerman locations: 15401 W. California and 15057 W. Whitesbridge. Since December 2009, the State of California has certified Plaintiffs for collection of e-waste. Plaintiffs have no certification or other permit for collection of cardboard.

Both center locations are zoned for commercial use. Neither location may be used for a trash hauling business. (Properties used for trash hauling businesses are restricted to Defendant's industrial park zone.)

Plaintiffs never requested a Kerman business license for solid waste hauling, handling, or for a solid waste enterprise. They never sought an exclusive contract for collection of cardboard or any other material from businesses. Plaintiffs have never provided a performance bond or proof of insurance for the collection of cardboard or any other material. They never promulgated a rate schedule for any of their collection services.

Similarly, Plaintiffs never sought a license from the State of California or from any county or municipality for collecting and transporting recyclable material to their business locations. They have never secured a permit for the operation of a solid waste collection vehicle from Defendant, Fresno County Department of Health, the State of California, or the federal government.

Beginning in or about 1993, Plaintiffs occasionally picked up recyclable materials from Kerman residents. As residents began to know Plaintiffs, Plaintiffs received more pick-up requests. Plaintiffs picked up recyclable materials, including cardboard, from Kerman, Fresno, Mendota, San Joaquin, and Tranquility. They had a regular route only for cardboard pick-up,

3

which represented from 95 to 98 percent of the material they collected from businesses. Plaintiffs never paid any business for the cardboard they collected, nor did they pay for any materials collected from schools.

Customers called Plaintiffs for pick-up of other recyclables. Within Kerman, Plaintiffs collected cardboard, newspaper, and white paper. Plaintiffs collected aluminum from Boyd's shop only.

Plaintiffs had no written contracts for pick-up of recyclables. Beginning in 1992, they operated their scrap metal business on an all-cash basis, keeping no records. Plaintiffs kept no records of their pick-ups, except for televisions and other items including cathode-ray tubes, which they were required to report to the State of California. Plaintiffs did not keep copies of the reports sent to the state. As a result, no records are available to identify what portion of Plaintiffs' earnings was derived from cardboard recycling, how much cardboard was collected from businesses, or the tonnage of cardboard collected annually in any year. Nor do Plaintiffs have any records for the years 2005-2008 of the recycled appliances that Plaintiffs picked up from customers for free. Defendant requested annual recycling tonnage reports from Plaintiffs, who provided information for only two years, both prior to 2000.

From 1998 through July 31, 2008, Browning-Ferris Industries ("BFI"), later named Allied Waste, provided trash collection and hauling, including recycling, pursuant to exclusive contracts with Defendant.

When Plaintiffs began living in Kerman in 2004, they were aware that BFI provided solid waste collection, including pick-up of recyclables, from residences, businesses, and schools.

In early 2008, Defendant issued a request for proposals for a new exclusive franchise for solid waste handling services in Kerman. Plaintiffs did not submit a proposal.

Defendant granted Mid-Valley Disposal Services the "Solid Waste Collection, Transportation and Disposal Services Franchise." Mid-Valley reported to City Manager Ron Manfredi that Plaintiffs were picking up recyclables from various Kerman businesses. On July 16, 2008, Defendant notified Plaintiffs that their placement of cardboard bins and collection of

///

cardboard from local businesses violated the Ordinance 08-02 and that Mid-Valley Disposal was the exclusive collector of recyclables in Kerman.

Plaintiffs continue to collect cardboard from the Kerman Burger King, the flea market, Boyd's industrial properties, and the local ARC workshop. Because Plaintiffs have kept no records, they cannot determine the difference between the amount of cardboard they now collect and the amount collected before enactment of Ordinance No. 08-02.

## II.   Summary Judgment

### A.   Applicable Law

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c)(2); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

When the moving party will have the burden of proof on an issue at trial, it must demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun*, 509 F.3d at 984. When the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or merely by pointing out that no evidence supports an essential element of the non-moving party's claim. *See Soremekun*, 509 F.3d at 984; *Nissan Fire and*

*Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan Fire & Marine*, 210 F.3d at 1102-03.  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Nissan Fire & Marine*, 210 F.3d at 1103.  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.) *(quoting* F.R.Civ.P. 56(e)), *cert. denied*, 129 S.Ct. 174 (2008).

   The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587; *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003).  Nonetheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1163 (E.D.Cal. 2008), *affirmed*, 340 Fed.Appx. 377 (9th Cir. 2009); *UMG Recordings, Inc. v. Sinnott*, 300 F.Supp.2d 993, 997 (E.D.Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." *del Carmen Guadelupe v. Negron Agosto*, 299 F.3d 15, 23 (1st Cir. 2002).  *See also Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1167 (9th Cir. 2002).  A "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. 249-50; *Hardage v. CBS Broadcasting, Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2005), *cert. denied*, 549 U.S. 812 (2006).  A court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, even though a court is not required to examine the entire file for evidence establishing a genuine issue of material fact when the opposing party has not set forth the evidence with adequate references.  *See Southern California*

*Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine*, 210 F.3d at 1103.

### B. The Parties' Motions

Except for Plaintiffs' contention that Defendant knew before passage of Ordinance No. 08-02 that Plaintiffs were picking up recyclables from local businesses,[1] the parties agree on all facts. Accordingly, this case is ripe for summary judgment.

Defendant moved for summary judgment on the complaint, contending that there is no triable issue as to any material fact, and that Defendant is entitled to judgment as a matter of law. It contends (1) that applicable precedent establishes that a municipality's granting of an exclusive franchise for waste collection does not violate Plaintiffs' civil rights by interference with contract or by uncompensated taking of Plaintiffs' contracts; (2) that City of Kerman Ordinance 08-02 is constitutional; (3) that Plaintiffs cannot establish a right to continue their business collecting recyclables under California Public Resources Code § 49520; and (4) that Plaintiffs cannot prove the existence of damages or the amount of damages with reasonable certainty.

Plaintiffs moved for summary judgment seeking (1) an order declaring Kerman Ordinance 08-02 unconstitutional, invalid, and void on its face, or, in the alternative, as applied to Plaintiffs to the extent that it purports to prevent Plaintiffs from collecting recyclable materials and from transporting those materials from offsite businesses or residences; (2) an injunction declaring that Plaintiffs are entitled to continue collecting recyclables from clients within the City of Kerman where such recyclables are donated to Plaintiffs, provided in return for bargained upon consideration, or otherwise removed from the customer's property before being discarded

---

[1] Plaintiffs contend that Defendant had to have known of their illegal activity and imply that Defendant's failing to act against Plaintiffs before 2008 constituted consent to their continuing recycling pick-ups after passage of Ordinance No. 08-02. Their allegation is not supported by any evidence sufficient to create a triable issue of fact that Defendant was aware of their activities. Plaintiffs must allege specific facts and cannot rely on speculative and conclusory allegations to raise a genuine dispute. *T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); *Thornhill Publishing Co., Inc. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

by customer, and that such collection will not be deemed a violation of local ordinances; and (3) a determination of liability against Defendant for the violation of Plaintiffs' rights under 42 U.S.C. § 1983.

### C. Constitutionality of Kerman Ordinance 08-02

Plaintiffs' briefs provide a laundry list of reasons why this Court should find Kerman Ordinance 08-02 to be unconstitutional, contending that the ordinance is overbroad, unauthorized by state law, and an invalid exercise of the police power, and that it violates Plaintiffs' due process rights, the contracts clause, and Plaintiffs' rights under 42 U.S.C. § 1983.  Defendant contends that the ordinance is a clearly constitutional exercise of the police power, authorized by California Public Resources Code § 49300.   Because providing comprehensive collection and disposal of waste in an efficient and economically sound manner is an obvious constitutional exercise of a municipality's police powers and is authorized by state law, Plaintiffs' multi-pronged attack on municipal authorization of exclusive waste removal contracts is unconvincing.

#### 1. State Preemption

A local ordinance may be contrary to state law if the state law expressly or impliedly preempts the area of law, or if the ordinance duplicates or contradicts a state law. *Valley Vista Services, Inc. v. City of Monterey Park*, 118 Cal.App.4th 881, 887-88 (2004).  "A local ordinance conflicts with state law if it enters an area that has been preempted by state law, or if it otherwise duplicates or contradicts the general law." *Id.* at 887.

California state law authorizes local governmental units to provide for solid waste disposal in accordance with governing state principals and standards, and with due consideration for specific local needs.  The California Constitution provides, at Article XI, § 7, "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."  The state legislature has enacted general laws that govern sanitation collection and assign specific powers and responsibilities to local government units, including cities. Opinion No. 06-404, 89 Ops.Cal.Atty.Gen. 241 (2006).  These statutes are primarily set forth in the California Integrated Waste Management Act of 1989 (Cal. Pub. Res. Code § 40000 *et seq.*).  The Waste Management Act does not include the explicit language

required for express preemption. *Waste Resource Technologies v. Department of Public Health of the City and County of San Francisco*, 23 Cal.App.4th 299, 304 (1994). In fact, it explicitly authorizes local management of solid waste disposal.

Section 40052 describes the legislative intent:

> The purpose of this division is to reduce, recycle, and reuse solid waste generated in the state to the maximum extent feasible in an efficient and cost-effective manner, to conserve water, energy and other natural resources, to protect the environment, to improve regulation of existing solid waste landfills, to ensure that new solid waste landfills are environmentally sound, to improve permitting procedures for solid waste management facilities, and to specify the responsibility of local governments to develop and implement integrated waste management programs.

The Waste Management Act authorizes municipalities to grant exclusive operating rights to solid waste disposal companies. *Valley Vista Services*, 118 Cal.App.4th at 884.

> The legislative body of a city may contract for the collection or disposal, or both, of garbage, waste, refuse, rubbish, offal, trimmings, or other refuse matter under the terms and conditions that are prescribed by the legislative body of the city by resolution or ordinance.

California Public Resources Code § 49300.

Defendant has permitted such contracts through a series of ordinances beginning in 1970 with Ordinance No. 178 and continuing through its most recent ordinance, No. 08-02. The parties do not dispute that Defendant has entered exclusive contracts for the pick-up of recyclables since 1998.

"Preemption by implication of legislative intent may not be found when the Legislature has expressed its intent to permit local regulations" and "should not be found when the statutory scheme recognizes local regulations." *Waste Resource Technologies*, 23 Cal.App.4th at 305. Because the Waste Management Act prescribes collaboration between the state and local government units to accomplish its goals, it cannot be said to have preempted the field by implication. *Id.* at 305-06. Accordingly, the Waste Management Act neither explicitly nor impliedly preempts the field of waste disposal. *Valley Vista*, 118 Cal.App.4th at 887-88.

Nor are Defendant's ordinances duplicative or contradictory of state law. A local law that is coextensive with a state law is duplicative. *Id.* at 888. A local law contradicts a state law if the local law prohibit[s] what the statute commands or command[s] what it prohibits." *Id.* The

Waste Management Act requires a municipality to divert at least half of its trash from landfills through a plan that incorporates recycling or other diversion of materials from the waste stream, but gives the municipality authority and discretion in determining the best way to comply with the Act's requirements. *Id.* at 890. *See also Waste Resource Technologies*, 23 Cal.App.4th at 308-09 (discussing the need for local governments to design plans for handling solid waste that address specific needs of that locale). Promulgated in conformity with the state's authorization and requirements, Ordinance 08-02 is neither duplicative nor contradictory.

### 2. Police Power and the Due Process Clause

Plaintiffs contend that because Ordinance 08-02 is not reasonably related to the public interest, it cannot be a valid exercise of the police power but must constitute an unlawful taking of Plaintiff's right to collect recyclables from its customers in Kerman. Defendant and this Court disagree. In California, local governmental control of solid waste disposal has been considered a valid exercise of the police power since the turn of the last century.

The police power is an inherent attribute of political sovereignty. *Pleasant Hill Bayshore Disposal, Inc. v. Chip-It Recycling, Inc.*, 91 Cal.App.4th 678, 689 (2001). A municipality's authority to make and enforce laws governing the collection and disposal of garbage is premised on the police power granted by the California Constitution, Article XI, § 7. *Matula v. Superior Court of Los Angeles County*, 146 Cal.App.2d 93, 98 (1956). "[E]verything which, from its nature and surroundings, is, or is liable to become, a menace to the public health or public safety, is a proper subject to be dealt with under the police power of a state." *California Reduction Co. v. Sanitary Reduction Works of San Francisco*, 126 F. 29, 34-35 (9th Cir. 1903), *affirmed*, 199 U.S. 306 (1905).

"Authority over refuse" is generally recognized as falling within the confines of the police power's authority to legislate for the public good. *Id.* "It is the duty of government to either collect the garbage . . . or cause it to be collected." *Matula*, 146 Cal.App.2d at 104. "The removal and disposition of garbage . . . is peculiarly a subject of municipal control, as without proper regulation [it] might become an intolerable nuisance and dangerous to the health and lives

///

of the citizens." *In re Zhizhuzza*, 147 Cal. 328, 335 (1905). Consistent with *Zhizhuzza*, the Waste Management Act delegates implementation of waste management to Defendant.

"Laws or ordinances enacted under the police power for the protection of the public health, reasonably adapted to that end, are not unconstitutional because they may incidentally operate to deprive individuals of their property or its use without compensation, or interfere with their personal liberty, nor because they may give one person a monopoly of a certain business or occupation, private rights being required to yield in such case to the public good." *Zhizhuzza*, 147 Cal. at 335(*citation omitted*). *See also In re Santos*, 88 Cal.App. 691, 697-98 (1928) (municipal health and safety concerns greatly outweigh the incidental value of garbage for rendering or animal food). "The very essence of the police power . . . is that the deprivation of individual rights and property cannot prevent its operation." *Waste Resource Technologies*, 23 Cal.App.4th at 311, *quoting Beverly Oil Co. v. City of Los Angeles*, 40 Cal.2d 552, 557 (1953). "[T]he clause prohibiting the taking of private property without compensation is not intended as a limitation . . . of those police powers which are necessary to the tranquility of every well-ordered community. [T]he legislature may make police regulations, although they may interfere with the full enjoyment of private property, and though no compensation is given." *California Reduction Company*, 199 U.S. at 324, *quoting Sedgwick's Treatise on Statutory and Constitutional Law* at pp. 434-35. Thus, even if Ordinance 08-02 incidentally interferes with any right Plaintiffs may have to collect recyclable waste in Kerman, it remains a valid exercise of the police power.

### 3. Ordinance Unenforceable Against Plaintiffs

Plaintiffs contend that Ordinance 08-02 is not enforceable against them because the recyclables that they collect from businesses and schools are not "waste." They rely on *Waste Management of the Desert, Inc. v. Palm Springs Recycling Center, Inc.*, 7 Cal.4th 478, 487-88 (1994), in which the California Supreme Court held that the Waste Management Act did not permit an exclusive franchise for recyclables not discarded by their owner. Because Plaintiffs do not pay for the material they collect, but compete with Mid-Valley for material discarded by its owner but having value as a recyclable material, this case is distinguishable from *Waste*

*Management*, in which the court considered a recycler that paid its clients for the recyclables that it collected from them.

The City of Palm Springs adopted an ordinance providing that "[a]ll garbage and rubbish accumulated in the city shall be collected, conveyed and disposed of by the city or by any person with whom the city has a contract for the collection, removal, and disposal of ashes, waste matter, garbage, and rubbish. Except as otherwise provided in this chapter, no person, other than the city or its contract agent, shall collect, convey over any of the streets or alleys of the city, or dispose of any refuse accumulated in the city." *Id.* at 482. The city granted Waste Management of the Desert an exclusive franchise for collection of residential and commercial waste within its boundaries. *Id.* The agreement between Palm Springs and Waste Management was set forth in two documents: a refuse collection agreement and a recycling agreement. *Id.* The refuse agreement did not prohibit any person from transporting his or her own waste to a legal dump site. *Id.* The recycling agreement granted Waste Management the exclusive right to collect all segregated recyclables placed in separate containers in specified locations, and authorized Waste Management to retain any revenue from the recyclables' sale. *Id.*

Thereafter, Waste Management sued Palm Springs Recycling, alleging that Palm Springs Recycling violated Waste Management's exclusive franchise by regularly sending trucks into Palm Springs to collect recyclables from large commercial customers. *Id.* at 483. The Supreme Court concluded that the recyclables were not waste until they were discarded. *Id.* at 484.

The court reasoned that, if an owner can sell a material, for recycling or some other purpose, the material has economic value to its owner. *Id.* Since the Waste Management Act and the Palm Springs ordinance contemplated disposal of waste, that is, something discarded as worthless or useless, it did not extend to any material that its owner sold:

> If the owner sells his property–that is, receives value for it–the property cannot be said to be worthless or useless in an economic sense and is thus not waste from the owner's perspective. Conversely, if the owner voluntarily disposes of the property without receiving compensation or other consideration in exchange–that is, throws it away–the obvious conclusion is that the property has no economic value to the owner. The concept of value is in this sense related to the manner in which the property is disposed of.

*Id.* at 485.

The court emphasized that the relevant concept in their analysis could not simply be whether or not the owner discarded the material. *Id.* at 485-86. If that were the operative concept, any Palm Springs resident could eviscerate Waste Management's exclusive franchise simply by retaining their waste materials for pick-up by the waste handler of its choice. *Id.* at 486. The relevant distinction is whether the property owner elects to sell its recyclables rather than throwing them away. *Id.* The court offered an example:

> A property owner throws his recyclables into the receptacle provided by the franchisee and does so without receiving compensation. He has plainly discarded his property, and it is thus waste under the Act. **Could he instead throw the property into the bin of a competing waste hauler without receiving compensation? No, because by disposing of the property without receiving compensation, he has discarded the property and thereby rendered it waste that is subject to the exclusive franchise.** If, however, he is paid for the material by the franchisee's competitor, the owner has sold the property and thus has not discarded it, so it has not become waste.

*Id.* (*emphasis added*).

The court concluded:

> The proper rule is this: If the owner of property disposes of it for compensation–in common parlance, sells it–it is not waste because it has not been discarded. The owner is not required under the Act to transfer this property to the exclusive franchisee. But, consistent with the purposes of the Act, an owner cannot *discard* property as he sees fit. Discarding the property renders the property waste and subjects it to the Act.

*Id.* at 488.

Despite a clear holding against Plaintiffs' interests, Plaintiffs maintain that *Waste Management* supports their position since it exempts "donations" from the owners of recyclable materials. Their reliance is misplaced. The *Waste Management* court drew a clear distinction between an owner's diverting its recyclables to a commercial enterprise competing with the holder of the exclusive franchise and *non-commercial* donations to charitable groups such as "a school newspaper drive, a youth group's gathering of empty soda pop containers, or clothing donations to the Salvation Army," or to a friend, such as a gift of scrap metal to a metal sculptor. *Id.* at 489. If a Kerman resident diverts its recyclables to Plaintiffs, it is not making a non-commercial donation or a gift, it is diverting its recyclables to a commercial enterprise competing

///

with Mid-Valley, the holder of an exclusive franchise to collect Kerman's waste. Thus, the *Waste Management* holding does not authorize Plaintiffs to pick up recyclables in Kerman.

A similar analysis applied in *Pleasant Hill Bayshore*, 91 Cal.App.4th at 678. Chip-It collected recyclable construction and demolition debris from various construction sites and commercial clients. *Id.* at 682. The clients paid Chip-It a hauling fee for providing debris boxes and for hauling and disposing of the debris. *Id.* Pleasant Hill sued Chip-It for violating Pleasant Hill's exclusive solid waste disposal franchise.

Perhaps because Chip-It's operations within the area of Pleasant Hill's exclusive franchise clearly ran afoul of the holding in *Waste Management*, Chip-It contended that a minor provision of the federal FAA Authorization Act preempted state law. *Pleasant Hill*, 91 Cal.App.4th at 682. Although the federal preemption argument is not at issue in this motion, the appellate court's analysis of whether the construction debris was waste is consistent with the analysis in *Waste Management*.

> At oral argument Chip-It insisted that the fact it picked up the material shows that the material is never allowed to 'enter[ ] into the waste stream' and thus cannot be deemed waste. The concept of a "waste stream" is a term that is not defined by statute and appears to derive from a casual comment by our Supreme Court. (*See Waste Management of the Desert, Inc. v. Palm Springs Recycling Center, Inc.*, (1994) 7 Cal.4th 478, 487, 489, 28 Cal.Rptr.2d 461, 869 P.2d 440.) It has no obvious bearing on the issue of preemption. "Entering into the waste stream" is not the standard used in California for determining whether material is waste; **the test is whether the material is "discarded," because only material that is without value to the person who discards it qualifies as waste according to the Waste Management Act**. (*Id.* at pp. 484-488, 28 Cal.Rptr.2d 461, 869 P.2d 440.) Property is not discarded if the owner sells it, but waste is discarded if someone is paid to take it away. (*Id.* at p. 485, 28 Cal.Rptr.2d 461, 869 P.2d 440; *City of San Marcos v. Coast Waste Management, Inc.* (1996) 47 Cal.App.4th 320, 326, 54 Cal.Rptr.2d 588.)

*Pleasant Hill*, 91 Cal.App.4th at 693 n. 10 (*emphasis added*).

In his deposition, Chip-It's president testified that his customers always paid him to take the construction debris away and that the customers considered all of the materials to be waste without regard to any potential for recycling. *Pleasant Hill*, 91 Cal.App.4th at 693 n. 11. "It is undisputed that the generators of the construction and demolition debris paid Chip-It to remove the material from job sites. "Under the Waste Management Act that makes the discarded

///

14

materials 'waste' and therefore subject to Pleasant Hill's exclusive franchises." *Pleasant Hill*, 91 Cal.App.4th at 695-96.

The cardboard and other recyclables that Plaintiffs collect in Kerman clearly fall within the category of waste. Plaintiffs' customers simply discard their recyclable waste in a different container from the one provided by Mid-Valley but receive no payment or other consideration from Plaintiffs. Plaintiffs' activities directly violate Mid-Valley's exclusive right to collect and dispose of Kerman's waste.[2]

### 4. Public School Waste Disposal

Plaintiffs contend that Ordinance 08-02 is unconstitutional since Defendant has no power to regulate the waste disposal provisions of public schools and school districts, which, as state agencies, are immune from local regulation unless they waive their immunity. Public schools and school districts have not waived immunity for waste management. *See Laidlaw Waste Systems, Inc. v. Bay Cities Services, Inc.*, 43 Cal.App.4th 630, 640-41 (1996). Plaintiffs' contention is irrelevant to this case. No public school or school district is a party to this case, and nothing suggests that Defendant has attempted enforcement of its ordinances against any public school or school district.

### D. Plaintiffs' Right to Continue Its Collection of Recyclables Under California Public Resources Code § 49520

Plaintiffs contend that, under California Public Resources Code § 49520, they are entitled to continue collecting recyclables for five years after Defendant notified them to discontinue collecting recyclables in violation of its ordinances. Section 49250 provides:

> If a local agency has authorized, by franchise, contract, license, or permit, a solid waste enterprise to provide solid waste handling services and those services have been lawfully provided for more than three previous years, the solid waste enterprise may continue to provide those services up to five years after mailed notification to the solid waste enterprise by the local agency having jurisdiction that exclusive solid waste handling services are to be provided or authorized, unless the solid waste enterprise has an exclusive franchise or contract.

---

[2] Plaintiffs' contention that they could elect to pay clients for their recyclables is irrelevant to this decision. What Plaintiffs may or may not attempt in the future is not relevant to the action before this Court. A court must render its decision based on the facts before it, not with regard to other factual situations. *United States v. Raines*, 362 U.S. 17, 21-22 (1960).

15

> If the solid waste enterprise has an exclusive franchise or contract, the solid waste enterprise shall continue to provide those services and shall be limited to the unexpired term of the contract or franchise or five years, whichever is less.

The first question is whether Defendant authorized Plaintiffs to provide solid waste handling services by franchise, contract, license, or permit. Neither party has alleged the existence of a franchise, contract, or permit between Defendant and Plaintiffs. Thus, the only possible source of Plaintiffs' alleged authorization is their general business license.

"'License' means a solid waste license issued by a local agency or a business license issued by a local agency if the local agency has not established any other form of authorization for the provision of solid waste handling services." California Public Resources Code § 49501.5. Although Plaintiffs hold a general business license to operate a recycling center, they were never licensed by any governmental entity to pick-up solid waste of any type from customers in Kerman. Defendant maintains that its issuance of the general business permit did not contemplate a solid waste handling business, pointing out that Kerman's zoning laws would not allow a solid waste disposal enterprise in the locations at which Plaintiffs' recycling centers operate.

Nor does Plaintiffs' status as a recycling center imply that Plaintiffs' business activities would include pick-up of recyclable materials. Under California law, a "[r]ecycling center" means an operation which is certified by the department and which accepts from customers, and pays or provides the refund value pursuant to Section 14572, for empty beverage containers intended to be recycled."[3] California Public Resources Code § 14520. A recycling center is but one type of "recycler," which includes recycling centers, drop-off or collection programs, and curbside programs. *See* California Public Resources Code § 14519.5. Nothing in Plaintiffs' general business license suggests authorization for any business other than that of the two recycling centers. Notably, empty beverage containers were not among the materials that Plaintiffs picked up from Kerman residents.

---

[3] Although California law authorizes the operation of a recycling center in conjunction with (an)other business(es), neither party contends that Plaintiffs were ever authorized to conduct any other business of which the recycling center was a part.

Even if Plaintiffs' general business license could somehow be construed to include the pick-up of recyclables other than empty beverage containers, a general business license only qualifies an enterprise to continue providing services "if the local agency has not established any other form of authorization for the provision of solid waste handling services." California Public Resources Code § 49501.5.  Since at least 1970, when Defendant enacted Ordinance No. 178, Defendant has authorized rubbish hauling through contracts containing specific terms and requiring the contractor to post a performance bond.  Plaintiffs have never entered a conforming contract to pick up recyclables, posted a performance bond, complied with the ordinance's rate schedule, or submitted to the health and safety restrictions set forth in the ordinances.

Nor can Plaintiffs establish that they lawfully provided solid waste handling services for more than three previous years.  "'Lawfully provided' means the services of the solid waste enterprise are in substantial compliance with the terms and conditions of its franchise, contract, license, or permit." California Public Resources Code § 14501.3.  Beginning with Ordinance No. 178, Kerman's ordinances provided for the municipality to enter into written contracts with rubbish haulers.  Schedules, rates and charges were regulated; contractors had to post a performance bond.  Residents were required to deposit rubbish only in cans or bins supplied by Kerman or its contractor.  The contractor was required to use closed, water-tight vehicles to prevent spilling; the Superintendent of Public Works was directed to inspect all collection and disposal vehicles for compliance.

Plaintiffs do not allege that they complied with any provision of this ordinance after receiving their general business permit in 1992.  Never having contracted with Defendant, as required by ordinance, they were not a solid waste disposal contractor.  They never posted a bond.  Their picking up materials for free beginning in 1993 violated Defendant's regulated schedules, rates and charges.  By providing chicken-wire enclosures, Plaintiffs caused residents to violate the requirement that they deposit rubbish, which the ordinance defined to include cardboard, only in containers provided by Defendant or its contractor.  Plaintiffs do not allege that Defendant ever inspected their truck(s).  Plaintiffs kept no records and, except for two years in the 1990's, have never reported amounts collected as required by Defendant's franchise

1  requirements. That Plaintiffs' unauthorized pick-up of recyclables was unlawful became more
2  obvious in 1994 when Ordinance No. 94-08 explicitly added recyclables to the list of materials to
3  be collected by its contractor and imposed stricter bonding requirements.[4]

5  Both parties agree that, in 1998, Defendant and Browning Ferris Industries entered into
6  an exclusive contract for collection of solid waste pursuant to the ordinance, and that since
7  becoming Kerman residents in 2004, Plaintiffs knew that BFI's exclusive contract included pick-
8  up of recyclables. Plaintiffs nonetheless continued to "skim the cream"[5] of Kerman's recyclables
9  by diverting commercially valuable recyclable materials in violation of Kerman's ordinances.
10  Never having been authorized to provide solid waste handling services in Kerman and
11  never having lawfully provided such services, Section 49520 does not authorize Plaintiffs to
12  continue their illegal collection activities.

### E. Plaintiffs' Ability to Prove Damages

Defendant contends that Plaintiffs' failure to maintain business records precludes their proving that they have suffered damages. Because this Court has determined to grant summary judgment in favor of Defendant and to order Plaintiffs' case dismissed, it need not further address whether Plaintiffs' failure to maintain records would have prevented them from proving their alleged damages.

### III. Conclusion and Order

In light of the undisputed facts in this case, Plaintiffs' constitutional challenge to Kerman Ordinance 08-02 is unfounded. Because Defendant never authorized Plaintiffs' pick-up of

---

[4] Plaintiffs also appear to have operated outside the requirements of multiple state laws. *See, e.g.,* California Business and Professions Code § 21605 (requiring every junk dealer and recycler who buys scrap metal that constitutes junk as defined in § 21600 to keep a written record of all sales and purchases made in the course of his or her business); California Business and Professions Code § 21608.6 (imposing record-keeping requirements on recyclers who purchase newspaper); California Health and Safety Code §§ 25211, 25211.2, and 25211.3 (requiring certification of appliance recyclers and imposing record-keeping requirements demonstrating compliance with applicable requirements of the Health and Safety Code and Public Resources Code).

[5] *See Waste Management*, 7 Cal.4th at 490 (quoting Waste Management's contention that Palm Springs Recycling Center "'skim[med] the cream of the recycling business' by collecting only the more commercially valuable materials and that a comprehensive recycling program [could] not be economically sustainable absent an exclusive franchise that includes recyclable materials.")

recyclables from its residents and because Plaintiffs never legally collected recyclables in Kerman, Plaintiffs are not entitled to any right to continue their pick-up activities under California Public Resources Code § 49520.  Accordingly, Defendant's motion for summary judgment is granted in full, and Plaintiffs' motion for summary judgment is denied.

Accordingly, this case is hereby DISMISSED, in its entirety, with prejudice.

IT IS SO ORDERED.

**Dated:   September 14, 2010**                          **/s/ Sandra M. Snyder**
                                                                                   UNITED STATES MAGISTRATE JUDGE